### PORTER *vs.* CURRY ET ALS.

APPEAL FROM THE COURT OF THE FIFTH JUDICIAL DISTRICT, THE JUDGE OF THE SEVENTH PRESIDING.

The captain of a steam-boat, owned by several persons, (including the captain) has authority to contract for freight, to be carried according to the usual trade of the boat; and all the owners are bound by such contract, even without their assent given thereto.

The captain, as agent of a steam-boat, may make contracts to take effect *in futuro*, to carry freight according to the usual course of trade of said boat.

Where the captain of a steam-boat, contracts to carry certain freight, at a future day, between the well known *termini* of his voyage, and fails or violates such contract, the owners of the boat are liable in damages, for all the loss sustained by the party, with whom the contract is made.

The measure of damages, and just criterion of loss to the owner, is the value of his property, at the place of destination, after deducting freight.

The plaintiff alleges, that through his agents in New-Orleans, in February, 1829, he employed captain R. W. Curry, commander and part owner of the steam-boat Attakapas, then running in the trade, from St. Martinville to New-Orleans, to carry five thousand seven hundred gallons of molasses, worth one thousand four hundred and twenty-five dollars, from the

30

sugar plantation of Messrs. Dubuclet & Benoit, on the Bayou Teche, to New-Orleans ; that to carry the said contract into effect, the plaintiff, by his agents, Fisher, Burke & Watson, in New-Orleans, shipped one hundred and sixty empty barrels, to be filled up with said molasses, at the said plantation, and shipped and returned from thence to New-Orleans, for which a freight of one dollar and twenty-five cents per barrel, was to be paid. The plaintiff further charges, that the said captain Curry failed to deliver more than sixty of the empty barrels, until long after the time agreed on ; and that he failed to receive the said barrels, when filled up, and to return them according to agreement, as specified in a bill of lading for the empty barrels, and wholly failed and refused to receive the said molasses, although repeatedly requested to do so ; and that the molasses remained two months, after they were to have been shipped, and until the close of the navigation, in July, 1829, when by fermentation and leakage, the molasses, in consequence of the failure of captain Curry to perform his contract, were wholly lost, except about fifty barrels, which were sent by another conveyance. He estimates the loss sustained, in consequence of the non-fulfilment of said contract, at one thousand six hundred dollars, for which he avers the captain and owners are liable, and prays judgment accordingly.

The defendants plead a general denial; that they were not bound by the contract, which appeared to be made by one B. Lafosse, as clerk of the steam-boat, who signed the bill of lading ; that he had no authority to sign such an instrument, and that the contract alleged to be made, in plaintiff's petition, is entirely out of the usual course of business, which the said clerk was engaged to perform ; they aver, that if they were bound, they have fully complied with their obligation ; that they delivered the one hundred and sixty empty barrels as directed, which were never put in a situation to be returned by the steam-boat ; so that the non-compliance with the contract, as alleged, was solely the fault of the plaintiff or his agents; that if all of said empty barrels were not delivered, it was owing to the danger of the

navigation, for which they are not responsible. They aver, that more than one year has elapsed, previous to instituting this suit, from the time of the contract; consequently the action is barred by the prescription of one year.

The plaintiff proved by several witnesses, the agreement to carry the molasses to New-Orleans, as alleged; that captain Curry, when he delivered the last lot of empty barrels, late in the season, from another steam-boat, (the Lady Lafayette) positively refused to receive the molasses, at the sugar plantation of Messrs. Dubuclet & Benoit; and that the molasses, with the exception of about fifty barrels, were wholly lost to the plaintiff; and the remaining fifty were shipped by another conveyance, but were so sour and leaky, as to be scarcely of any value.

The clerk of the steam-boat swears, he filled up and signed the bill of lading, according to the orders of captain Curry. It stipulates as follows:

"Shipped in good order, &c., by F. B. & W., on board the steam-boat Attakapas, whereof Curry is master, now lying in the port of New-Orleans, one hundred and sixty barrels, deliverable to Messrs. Dubuclet & Benoit, &c., to be filled up with molasses and returned to the shippers, &c., in like good order and condition, at the port of New-Orleans, (the dangers of the seas only excepted) unto the shippers, (F. B. & W.) or to their assigns, he or they paying freight for said barrels of molasses, at the rate of one dollar and twenty-five cents a barrel, &c. In witness whereof, the master or purser of the said vessel, hath affirmed to three bills lading, &c. Dated, New-Orleans, the 6th day of February, 1829." "B. Lafosse."

The defendants proved, that captain Curry stopped once for sixty or seventy barrels, which were not then ready.

Dubuclet proved, that he and Benoit sold the quantity of molasses stated, (five thousand seven hundred gallons) for thirteen horses, estimated at seven hundred and fifty dollars. It was also proved, that Fisher, Burke & Watson were the agents of plaintiff, and that the molasses were worth

WESTERN DIST. twenty-eight cents per gallon, in New-Orleans, at the time
September, 1834. they were to be delivered.

PORTER          The defendants' counsel moved the court to charge the
*vs.*
CURRY ET ALS. jury, that the contract arising on the bill of lading, to carry
property or freight, at *a future* day, made by the captain, was
not binding on the owners of the boat, unless the captain was
specially authorised to make such a contract, and that the
power of making such a contract, is not included among the
general powers possessed by captains to make contracts,
which are binding upon the owners of vessels, &c. The judge
refused, and charged the jury to the contrary of that requested.
The defendants' counsel moved further, that the claim of the
plaintiff, being for damages arising from the non-delivery of
the barrels, &c., was barred by the prescription of one year ;
but the judge charged the jury, that the plaintiff's claim
consisted of two branches, one for damages, for the non-
delivery of the barrels received on board ; and the other for
damages, for not taking on board molasses, &c.; that as to
the first claim, the plea of prescription had attached ; but
that as to the second, the court was of opinion, that said plea
was not applicable. The defendants moved several other
clauses, to be given in charge to the jury, to all of which, and
those stated, the judge refused, and a bill of exceptions
was taken to said charge.

The jury returned a verdict of nine hundred and eighty-
two dollars fifteen cents, for the plaintiff, and after overruling
a motion for anew trial, the district judge rendered judgment,
in conformity to the verdict.

The defendants appealed.

*Bowen and Lewis,* for the plaintiff.

1. In this case, the defendants resist the claim for damages,
on the ground that they were not put in delay before suit.
This was not necessary, as a party may be *en demeure* by the
*mere operation of law,* when the breach of the contract is
declared by the law, equivalent to a default. *La. Code,
art.* 1905, *No.* 3.

2. When the thing to be given, or done, by the contract,
was of such a nature, that it could only be given or done,

within a certain time, which has elapsed, or under certain circumstances, which no longer exist, the debtor need not be put in delay, to entitle the creditor to damages. *La. Code,* *art.* 1927, *No.* 1.

3. *Merlin,* after laying down the rule, that a special demand is necessary to put a debtor *in delay,* unless the contract stipulates, that it shall be fulfilled in a fixed time, states as exceptions to the rule, cases in which the debtor is *en demeure,* without a subsequent demand : 1. Conventions which relate to commerce, as an agreement to carry merchandise to a fair, when the debtor is in delay, if he lets the time of the *fair* pass, without carrying the goods, &c. 2. Conventions which must be executed in a certain time, as repairing a wall, in danger of falling, &c. 3 *Merlin's Reports, Verbo Demeure, p.* 515. 2 *Ibid. Verbo Commintoire, p.* 491.

4. This is a commercial contract, and is not to be governed by the technical rules respecting *demeure,* contained in our Code, but by the commercial law. The *La. Code* contemplates the existence of a future Code of Commerce. See *art.* 2823.

5. Until a commercial code is adopted, commercial conventions must be determined by the existing commercial law, as recognised in the Code, in relation to bills of exchange and promissory notes. Other commercial contracts are decided by commercial law. *La. Code,* 1908. 3 *La. Reports,* 225.

6. The captain or master of the boat, who made this contract, had authority to make it, which was binding on the owners. The bill of lading was signed by the clerk, which is usual, and is done by the orders of the master. A bill of lading may be signed by the mate or clerk. *Jacobson's Sea Laws,* 94, 172.

7. The owners are responsible for every contract of the master, relative to the usual employment of the vessel. *Abbott on Shipping,* 152, 132, 133, 134.

8. But if a vessel be built for passengers only, the owners would not be liable for the contract of the captain, to take

freight : or if it were employed in a particular trade, they would not be responsible for the contract of the master, to employ her in a different trade. *Abbott on Shipping*, 134.

9. This court has decided, that by the law of this state, owners are liable for contracts of freight or passage, entered into by the captain. 6 *La. Reports*, 319.

10. This contract was in part executed; by taking in and delivering the empty barrels, &c., and a voluntary execution involvés a renunciation of all exceptions to it. 6 *La. Reports*, 530.

11. The prescription of one year, cannot be pleaded to this action, which is not a *quasi delit*, but a breach of contract; and the article 3501 of the *La. Code* relied on, applies only to *quasi delits*. 2 *La. Reports*, 429. 3 *Ibid.* 591.

12. If they claim it under that part of article 3501, which gives it as an exception to the action, for the delivery of goods or merchandise, we answer, that this part of the article has no relation to this action, which is brought, not to recover damages for the non-delivery of shipped articles, but for not receiving on board merchandise which was ready, and contracted to be shipped by defendants.

13. The court erred in charging the jury, that prescription barred that part of our claim, which demanded damages for the loss of the one hundred and twenty barrels, by which the jury only gave damages for the loss sustained on the molasses. The judgment ought to be amended, so as to allow the value of the barrels.

*Simon & Brownson*, for defendants.

1. The contract on which this suit is instituted, called " bill of lading," containing a stipulation to receive freight at a future period, is not obligatory on the owners, unless the captain was specially authorised to make such a contract; and that authorisation is not included in the general powers which captains have, in the conduct and administration of their crafts. *Jacobson's Sea Laws, p.* 94. *Abbott on Shipping, p.* 132, 133, 134.

2. The plaintiff's claim being for damages, resulting from the non-delivery of certain barrels put on board, the claim is prescribed by the prescription of one year. *La. Code, art.* 3501.

3. The stipulation contained in *the bill of lading*, to receive molasses on board the boat, at a future period, being in its nature a *synallagmatic* contract, it is not valid as such, having been signed only by one of the parties. *La. Code, art.* 1758, 1759, 1791, 1792, 1793, 1794. 6 *Toullier, Nos.* 18, 19. 6 *La. Reports,* 215.

4. The plaintiff, by said contract, was not bound to deliver the freight, and we had no means of compelling him to comply with that part of the contract. Could he not, notwithstanding said stipulation, have given his freight to another boat? What was to prevent him? A bill of lading is a receipt; something must be received to give force thereto. In this case nothing was received, it was only a promise *in futuro*; and it must be reciprocal, on one side to take, and on the other to deliver, otherwise there is no contract.

5. The plaintiff's claim being for damages, resulting from an imputed neglect, it is in the nature of a *quasi delit*, and therefore the claim is barred by the prescription of one year. *La. Code, art.* 3501, 2294, 2295, 2296. 6 *Toullier, No.* 232. *Code Nap. art.* 1382, 1383.

6. The damages claimed, arising from a passive violation of a contract, the defendants are not responsible, unless they have been put in delay, according to law. *La. Code, art.* 1905, 1906, 1925, 1926, 1927. 6 *Toullier, Nos.* 238, 239, 240, 241, 244, 254.

7. In case the jury were of opinion, that damages are due, we contend, that there being no fraud imputed to the defendants, the damages ought to be the value of the molasses, at the place where it was purchased, and not at the place where it was to be delivered. *La. Code, art.* 1928. 6 *Toullier, No.* 289.

WESTERN DIST.
September, 1834.

PORTER
vs.
CURRY ET ALS.

The captain of a steam-boat, owned by several persons, (including the captain,) has authority to contract for freight, to be carried according to the usual trade of the boat; and all the owners are bound by such contract, even without their assent given thereto.

The captain as agent of a steam-boat, may make contracts to take effect *in futuro*, to carry freight according to the usual course of trade of said boat.

Where the captain of a steam-boat contracts to carry certain freight at a future day, between the well known *termini* of his voyage, and fails or violates such contract, the owners of the boat are liable in damages for all the loss sustained by the party with whom the contract is made.

The measure of damages and just criterion of loss to the owner, is the value of his property at the place of destination, after deducting freight.

*Mathews, J.*, delivered the opinion of the court.

In this case the plaintiff sues the master and owners of the steam-boat Attakapas, to recover the value of a certain quantity of molasses, of which he was owner, and which he alleges was lost to him by the misconduct of said master, by acting in violation of, or neglect to comply with the conditions of a contract, by which the defendant Curry, promised and undertook to carry and convey said molasses from Attakapas to New-Orleans, for and on account of the owner. The cause was submitted to a jury in the court below, who found a verdict for the plaintiff, and assessed his damages to the sum of nine hundred eighty two dollars and fifteen cents, and judgment being thereon rendered, the defendants appealed.

The counsel for the appellants do not contest the liability of the master under the contract, and circumstances as proven in the case, but insist that the other owners are not legally bound by the agreement or contract made by him, as there is no evidence of their assent to it, and the captain of the boat did not act within the scope of his authorised powers as such.

The principal facts in relation to this contract, are as follow: the master of the boat who was also a part owner, being in New-Orleans, agreed with Fisher, Burke & Watson, the agents of the plaintiff, to transport empty barrels from the city to the plantation of Dubuclet & Benoit, situated on the Bayou Teche, in Attakapas, for the purpose of being filled with molasses, and when thus filled, to carry them back to New-Orleans, to be delivered to the factors of the plaintiff, &c.

The agreement thus to carry, was according to the usual trade of the boat; it is true, that there is no evidence which shows that the master was in the habit of making contracts to carry, to take effect *in futuro*. But we are unable to perceive any thing unreasonable or contrary to the usual course of trade, in which the boat was used in a contract, to transport produce at some future voyage between the well known *termini* of her voyages. We are of opinion, that the master had authority to make a contract, such as was entered into in the present instance, so as to bind the owners, and the

evidence is clear as to its violation and consequent loss of the molasses. But it, is contended for the defendants, that the measure of damages assumed by the jury is erroneous. We think not ; the true and just criterion of loss to the owner, is the value of his property at the place of destination, deducting the cost of freight, and it cannot be pretended, that the verdict exceeds that value.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.