# 7880

Maison Blanche Company—   No. 7880.

—vs—   —Court of Appeal.

Louisville & Nashville R. R. Co. — Parish of Orleans.

--------------

Dinkelspiel. J.

--------------

7880

164

Finkelspiel. J.

Plaintiff in this case substantially claims of de
defendant the sum of 418.60., with legal interest
from judicial demand, alleging, that on or about
September, 9th. 1916, there was shipped from New
York to plaintiff two certain cases of petticoats,
securely and properly packed, marked, and consigned
for delivery to plaintiff in the City of New Orleans.
That said shipment was in good condition, duly del-
ivered to and receipted for by the Ocean Steamship
Co. at New York City, for trans-shipment to New
Orleans by defendant company, and was delivered to
the Company and was by it carried to New Orleans.
That upon the arrival of said shipment at New Orle-
ans, defendant company issued it's freight bills
from point of origin to destination and collected
from plaintiff the full amount of said freight
charges, and, that about September 13th. 1916, upon
inspection by plaintiff of said petticoats, they
found same damaged, a part thereof ruined by water
while in transit and immeadiately notified defen-
dant company, who examined said shipment; checked
same with plaintiff, agreed to the damage and in-
jury thereto and assumed liability therefor, and
that following September 23rd. 1916, defendant in
keeping with said admission of liability, author-
ized plaintiff to turn over to defendant's agent,
for disposition for defendant's account, the said
shipment, which plaintiff accordingly did, and
that said defendant through it's said agent took
possession and control of said goods and removed
them from plaintiff's premises and custody, and
plaintiff was informed that the goods constituting
said shipment were sold by said agent to one

165

Samuels, an Auctioner, and the latter has, as instructed by defendant, rendered his account of sales to defendant.

Plaintiff further avers, that the shipment consisted of petticoats of a total invoice value of $1.547.18; that 171 petticoats were damaged to the extent of $206.23, nett, and 53 of the petticoats were of the value of $212.37, which were entirely ruined, and that the damaged to said shipment amounts to $418.60.; that said injury, loss and damage occurred to said goods while in the care, custody and control of the defendant company, and that said loss, injury and damage was entirely due to the negligent acts and ommissions of said defendant, in violation of it's duty to plaintiff and in violation of the duties imposed upon it by law.

Plaintiff further avers, that in any event defendant company has assumed, admitted and acknow -ledged liability as herein above set forth, and further, that defendant by it's actions kxx is estopped from denying or shifting liability in the premises and avering amicable demand aks for judgment as herein stated.

In it's answer, defendant admits that it is a corporation and a common carrier carrying freight, carrying on an interstate business as such, doing business in the City of New Orleans, but denies that it is indebted unto plaintiff in the sum named or anyother sum.

Denies that the shipment was in good condition or properly delivered, when delivered to and recei- -ted for by the Ocean Steamship Company at New York City, and avers that it was the last connecting carrier and that it did transport the said

166

shipment over a portion of it's route, from Montgomery, Alabama, to destination, but beyond that denies all the other allegations of the petition.

Further answering, defendant admits that said shipment was delivered to it at Montgomery, Alabama, and by it transported to New Orleans, and if the words, "duly delivered", used is meant that said shipment was delivered to defendant in good condition, then denies that such shipment was delivered to is in good condition.

Further answering, admits, that in so far as defendant collecting freight in excess of its proportion of the amount earned on the entire trip, then it was acting for the benefit of its prior connecting carriers as is always customary in such matters.

Defendant denies the allegations in paragraph 16, of the petition and asserts, that on or about the date stated the shipment arried in this City, was delivered to plaintiff, was taken by plaintiff to its establishment and when opened certain damage was found to exist. Defendant had already discovered the existance of some damage, as will be shown, advised plaintiff of the existance thersof when delivery was made. As to the nature and amount of the damage defendant calls for strict proof, and particularly denies that said damage occurred in transit on defendants line or while in defendant's possession.

xxtffxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

Defendant admits that plaintiff immeadiately notified it, of the damage and with it through a representative examined said shipment, and

checked the damage with plaintiff.

Defendant shows, that this examination and checking was done in order to protect defendant and or it's connecting carriers in the event liability for the said damage should be found to rest with anyother of the carriers; and admits denies further, that it agreed to the amount of damage or injury determined by plaintiff and denies most emphatically that it assumed liability therefor or that liability on it's part existed.

Defendant further answering, denies that it ever made any admission of liabilty in the premises; denies that it authorized plaintiff to turn the damaged goods over to defendant for defendants account or otherwise, or the goodsw was so turned over to defendant, asserting that by mutual agreement, but without any admission of liability on the part of defendant, certain of the goods were by plaintiff turned over to Mr. Samuels, Auctioneer, for disposition for account of whom it may concern, except to the extent herein above set forth, otherwise allegation denied.

Answering further, paragraph 9, defendant admits, that certain of the goods constituting the shipment was sold by Samuels, Auctioneer,and that said Samuels, has rendered account sales to defendant, and defendant denies that said Samuels was it's agent in the matter or that it instructed him what action to take.

Answering further, on information and belief, avers, that said Samuels rendered account sales to the plaintiff as well, the goods having been delivered to Samuels by plaintiff under the circumstances outlined in defendants answer, and defendant shows that said Samuels still retains the proceeds of the sale of said goods.

168

Answering paragraph 11, defendant denies the allegations contained therein; shows that it delivered the shipment to consignee, at New Orleans, in the same condition in which it received it at Montgomery, Ala.

Answering paragraph 12, defendant denies that any loss, injury or damage, which the said goods may have sustained was due to the negligent acts or ommissions of the defendant; denies that defendant either did or failed to do anything in violation of it's duty to plaintiff or any violation of the duties imposed upon it by law.

Answering paragraph 13, defendant denies that it ever assumed, admitted or acknowledged, any liability whatsoever in the premises, either as set forth in plaintiffs petition or otherwise; denies any liability on defendants part ever existed.

Answering paragraph 14, defendant denies the existance of the actions set forth in plaintiffs petition or anyother action which could in any wise be considered an admission of liability to any extent whatsoever; denies that such actions, even if they had existed would or could constitute estoppal, or could or would prevent defendant from denying or shifting liability in the premises.

Defendant shows that liability on it's part never existed, and that it would impossible and illegal by such an admission to create liability, where liability did not in fact exist, as this would be contrayry to the Interstate Commerce Act of February, 4th. 1887.(24. Statutes at large, 3790 and the various acts amendatory thereof.

Answering paragraph 16, defendant shows, that it is herein sued as an Interstate carrier for an alleged damage to an Interstate shipment, and that the rights

169

and liabilities in the premises are to be determined
solely by the provisions of the Interstate Commerce
Act, as above cited.

Defendant further shows; that it is herein sued
as the last connecting carrier participating in the
transportation of the shipment from New York City to
Savanah, Ga. by sea and from Savanah Ga., by rail,
that as such it was and is only liable for damage
caused by it and on its own line, that it handled
the shipment in question only from Montgomery, Ala.
to New Orleans, La., that during the time said ship-
ment was in its possession it was carefully and prop-
erly handled, sustained no damage of any sort whatso-
ever; was delivered to consignee in New Orleans in
the same condition in which it was received from
its connection at Montgomery, Ala. ;that it received
said shipment at Montgomery, in a sealed car which
was not opened until it arrived at Mobile, Ala, that
the appearance of the shipment indicated that it had
sustained damage from water, which damage was, however
as above stated, not sustained while the shipment
was in defendants possession, and was not caused or
contributed to by defendant nor by anyone for whom
defendant is or was responsible.

Wherefore, defendant prays, that after due pro-
ceedings had, there be judgment in its favor, dis-
missing this suit, and for all costs and general
relief.

The testimony of M. E. Ramsey, H. S. Peckinpaugh
and J. S. Davis, all residing in the City of Mobile,
State of Alabama, and Joseph Martin and C. B. Turnips-
eed, residing in the City of Montgomery, State of
Alabama, was taken in this matter.

170

Mr. Ramsey, in answer to interrogatories propounded to him says; that he is a freight Conductor of defendant company and that he handled the car in question from Mobile to New Orleans in Train 71, September 15th. 1916. The car came into his possession at 7.50 p. m. and on September, 15th. 1916, arrived at New Orleans at 5.08 in the morning. The car was sealed. Opened by him and all contents inspected him while it was in his custody. In reply to the 12th. interrogatory he says, there was no possible chance for its becoming damaged by being wet, while in my possession and under my control as the weather was clear during the entire trip. I handled this car from Mobile to New Orleans in the same condition that it was received in Mobile and delivered it without exception.

J. S. Davis, says; that he is a Cooper of defendant in the freight department, and as such has to examine and fix up shipments. The car in question was sealed. The car had been opened and he examined it and found it in a damaged condition, wet, throughout. The day was fair when the car was unloaded.

H. S. Peckinpaugh, swears, that he is Chief Clerk of the Louisville & Nashville Railroad Freight Department; saw the shipment inspected and re-coopered by J. S. Davis, when handled from car to transfer platform. Same arrived in Mobile September, 15th. 1916. Car being No. 2435, C. & I. & L. The car was proetected by seals; the seal was broken by Check Clerk, L. C. Krom, not then in the employ of defendant, but in the service of the U. S. Army in France, and the car was entered by him, who discovered a case of petticoats packed in boxes needing re-coopering. He called Mr. Davis who placed the package on the transfer platform to be examin

171

-ed and re-coopered. Davis examined the petticoats in question and found them to be damaged by water. The package seemed to be wet for sometime as the goods were wet throughout. It was a clear day. The car showed no signs of having a leaking roof.

C. P. Turnipseed, testified, that he was employed by defendant company as engine foreman, and in the month of September, 1916 was employed by defendant company as Yard Master. On September, 14th. 1916, at 7.10 a. m., the shipment in question came into possession of defendant at its south and north yards in the City of Montgomery, Ala., and was received in his custody. It came from the Central of Georgia Railroad Co.; was sealed and was not opened while at Montgomery, and arrived in charge of a freight conductor employed by the Central of Georgia R. R. Co; the seals were not broken while in Montgomery, and so far as he knew there was no opportunity for the contents of said car to become damaged whilst at Montgomery, nor was there any chance of the contents of said car to become wet while in the yards of the company in Montgomery.

In addition to this there is filed by defendant the monthly metriological summary of the weather reports which shows that it rained in New York on September, 7th. 8th. and 9th; that it rained in Savanah on September, 12th. 13th. and 14th, 1916.

The deposition of Turnipseed shows, that the shipment was received by defendant at Montgomery from the Central of Georgia Railroad Co. in car C. I. L. 3435, at 7.10 a. m. on September, 14th.; that the car was sealed with Ocean Steamship Company's seals, which were not broken at Montgomery;

172

that there was no opportunity for damage at Montgomery, and that the goods in question left Montgomery in the same car, with seals unbroken. The weather was clear on September 15th. at Mobile, and it arrived at New Orleans at 5.08, a. m., September, 16th. that the weather was clear during the entire trip, and therefor there was no possibility for the goods to become damaged or wet.

And in view of the further fact, that according to the weather report of the U. S. Weather Bureau, offered in evidence as L. & N. 11, it appears that no rain whatsoever fell in New Orleans from September 13th. to September 25th. before which latter date it is unquestionable that the goods had been delivered especially as the freight bill offered by plaintiff as Exhibit 2, is dated September, 18th.

In behalf of plaintiff Mr. Reilly and Mr. M. R. Saal testified affirmatively to the damaged goods; the condition in which they were received and to the fact, substantially, that they were placed by defendant company in possession of Mr. Samuels, Auctioneer, that a portion of the petticoats were sold by the company at cost to its employees.

There was the testimony, by commission, of Samuel Quinn, Shipping Clerk, with Wm. Eppstein of New York, who were the vendors of the petticoats in question sold to plaintiff, and he says, that he packed the petticoats in seperate card board boxes and they were placed in two large wooden boxes; the that he nailed the cases up and delivered to the Trucking Company, that they were in good condition, this was done on September, 8th., between 9 and 12 o'clock in the morning.

The testimony of Ackley Cannon, taken under

173

commission in New York City, Manager of Smith Bros.
Trucking Company, says, that he supervised the skk
shipment of the two cases of petticoats from Epp-
stein & Bros., of New York City to plaintiff in
New Orleans during September, 1916; that he receiv
-ed the shipment on either the 8th. or 9th. of Sep -
tember; that same was in good condition; that the
cases were securely clasped, mailed and everything
about the shipment was in first class order; he
took these cases to the Ocean Steamship Co. Pier
35, North River, and put the cases on board the
Steamship City of Montgomery. That this shipment
was exposed to no rain nor had there been any wet-
ting on said cases by rain water or any water up
to the time they left the Trucking House, and that
the distance fm the Steamship Co. from the Truck-
ing House would require a journey of about ten min
-utes, but does not know whether it rained on the
days on which he had possession of the goods in
question.

Joseph Martin, another witness in behalf of
defendant, whose deposition was taken at Mont-
gomery, Ala,. under commission, testified, substan
-tially; that he was employed by defendant company
as a Freight Conductor during the month of Septem-
ber, 1916. He handled C. I. & L. car 3435 from
Montgomery to Mobile, and handled the car in ques-
tion from Montgomery to Mobile on the 14th. of
September, 1916 in train 73, that the car came into
his possession at 2.20. p. m. on September, 14th.
1916; left his custody at 12.30. a. m. September,
15th. 1916 at Mobile; the car was sealed when recei-
ved by him. The car was not opened  or its contents
inspected whilst in his custody, there was no rough

174

or unusual handling whilst in his custody.

It has been established in this case that the goods in question were not damaged while on defendants line and that the damage existed when defendant received the good at Montgomery. The record proves through the weather reports of the U. S. WWeather Bureau, both at New York and Savanah, the manner in which the goods may have been damaged, hence there being no liability on the part of defendant resulting from handling of the goods therefor no liability was created by any connection of defendant there after and no liability could in such a way be created.

Under former decisions of the highest Court in this State, and prior to the Interstate Commerce Act, under certain contingencies the last carrier, damages occuring, was held responsible. 7 Court Appeal. 26. 4 Ann. 563. 24 Ann. 165. 21 Ann. 363 18 Ann. 9. 15 Ann. 438. 11 Ann. 324. 10 Ann.414.. 7 La. 233. C. C. 2751. 36 Ann. 186.

The last citation of authority is to be found in Southern Reporter, September, 11ta. 1920, page,625, Henderson vs. Kansas City Southern Railway Co., " The common law rule that the delivering carrier of an interstate shipment shall be liable for injury to freight delivered in a damaged condition on proof merely that the goods were delivered to the initial carrier, another railraod in another State, in good condition, and without proof that the damage or injury occurred on the line of the delivering carrier, has been superceeded by the Carmack Amendment.

In the body of the opinion of this same case, he the Judges of the Court of Appeal asked for instruc

-tions on the following question; Have the Federal
Statutes regulating interstate commerce, known as
the Carmack Amendment, superseded and abolished
the rule, heretofore prevailing in Louisiana, and
in most of the common law States, that a delivering
carrier of an interstate shipment shall be liable
for injury to freight delivered in a damaged con-
dition, upon proof merely that the goods were del-
ivered to the initial carrier, another railroad in
another State, in good condition, without proof
that the injury or damage occurred on the line of
the delivering carrier?

This Court held, in the case of Duval vs. Louisi
-ana Western P. R. Co. 135 Ann. 185., that the
Carmack Amendment, imposing liability on an initial
carrier for loss of goods, or damage to freight,

occuring anywhere on the through route, did not
abrogate the rule of evidence, that freight recei
-ved in good order by the initial carrier is presu-
med to have been received in like good order by
the succeeding carrier, and that a delivery of frei-
ght by the terminal carrier in damaged damaged
condition raises a presumption that the damage
occurred on the delivering carrier's line.

Since that decision was rendered, however, the
Supreme Court of the United States has ruled other-
wise.

In the case of Charleston, Western Carolina
Railway Co. -vs- Varnville Furniture Co. 237 U. S.
595., it was held; That Congress had, by the Car-
mack Amendment, so far taken over the subject of
a carrier's liability for damage to interstate
shipment as to invalidate the provisions of the
South Carolina Civil Code, in so far as those

176

provisions had undertaken to subject a terminal carrier to a penalty for failure to pay promptly a claim for damage to an interstate shipment, no matter where the loss had occurred, and unless the carier proved that the damage did not occur while the goods were in its possession, or succeeded within the forty days allowed by the statute, in shifting the loss, by giving notice as to when, where, and by which carrier the property was damaged, or by showing that it, the delivering carrier, used due deligence, but was unable to discover where the damage occurred.

The Court goes on to say:The Legislature of this State, in the latest statute fixing the liability of public carriers for freight received and not delivered, or for damage occurring to freight in transit, has recognized that the author -ity of Congress, with regard to interstate shipment is paramount, and that, when Congress exercises its authority upon the subject the States authority ceased.

Act No. 40 of 1914, p. 196, amending and re-enacting section 1 of act 182 of 1908, which, in turn, had amended and re-enacted section 1 of act 93 of 1888, imposing liability upon public carriers doing business in this State, for failure for del to deliver freight received by them, or for damage occurring to freight in transit, expressly exempts from the operation of the law, freight received in sealed cars from other routes outside of the State...

The statute beyond conferring jurisidiction upon the Court at the place of delivery of freight, is merely an embodiment of the common law rule or presumption. And the express reservation or exception, with regard to freight received in xxxld

177

sealed cars from other roads outside of this State, is a plain implication or recognition that the common law rule cannot prevail over the acts of Congress with regard to interstate shipmentxx ship--ment."

"The defendant in this case cannot be held liable, on a presumption of law, or without proof as a fact, that the damage occurred while the freight was in defendants possession."

This last expression of the highest Court of this State, together with authorities therein cited, settles this case beyond question.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court, be, and the same is hereby, set aside and annuled, and that there now be judgment in favor of defendant, plaintiff to pay costs of both Courts.

—Judgment Reversed— Judgment for Defendant.